UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRY HAMMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4: 16 CV 529 DDN |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Terry Hammond for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401- 434, 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born in 1965 and was 49 years old at the time of his hearing. (Tr. 32.) He filed his applications on January 18, 2013, alleging a November 23, 2011 onset date. (Tr. 10, 270-75, 304, 310-11.) Plaintiff's insured status under Title II of the Act expired

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted as Acting Commissioner for Carolyn W. Colvin as the defendant in this suit. 42 U.S.C. § 405(g) (last sentence).

on December 31, 2011.[2] In his Disability Report, he alleged disability due to back problems, including degenerative disc disease, neck and right knee problems, and right shoulder problems. (Tr. at 335.) His applications were denied, and he requested a hearing before an ALJ. (Tr. 4, 128-36.)

On December 22, 2014, following a hearing, an ALJ found that plaintiff was not "under a disability" as defined in the Act. (Tr. 10-22.) The Appeals Council denied his request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

On January 31, 2012, plaintiff saw Jose R. Remo, M.D., an internist, for back pain and hypertension. Plaintiff described his back pain as worsening and radiating down the left buttock. He stated that his symptoms worsened with climbing stairs, bending, changing positions, and daily and other activities. Dr. Remo recommended back stretching exercises and refilled a prescription for Norco (hydrocodone), for moderate to severe pain. Examination revealed tenderness of the spine, but no other abnormalities. (Tr. at 385-87.)

Plaintiff saw Dr. Remo again on February 27, 2012, and he recommended a low-fat diet and increased exercise. In addition to Norco, plaintiff's medications included Diovan and Lopressor, for high blood pressure; Flexeril, a muscle relaxant; Naprosyn, an NSAID; and Trazadone, an antidepressant. (Tr. at 392.)

---

[2] To be entitled to disability benefits under Title II of the Act, plaintiff had the burden to show disability prior to the expiration of his insured status on December 31, 2011. (Tr. 10, 304.) See 20 C.F.R. § 404.130; Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009). To be entitled to supplemental security income under Title XVI of the Act, plaintiff must establish he was disabled while his application was pending. See 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335. Thus, the relevant period for consideration in this case is from November 23, 2011, plaintiff's alleged onset date, through December 22, 2014, the date of the ALJ's decision.

Plaintiff saw Dr. Remo again on April 23, 2012, for worsening back pain in poor control. He had been helping a friend work in the garden. He stated that the pain worsened with bending, sitting, and standing, and that his symptoms were relieved by ice. Examination revealed moderate tenderness to the lumbar spine with motion and an unsteady gait. Dr. Remo prescribed Flexeril and Naprosyn and encouraged back exercises. (Tr. at 382-84.)

On June 20, 2012, plaintiff saw Dr. Remo for back pain in poor control that seemed to be worsening. The pain was aggravated by bending, daily activities, extension, flexion, lifting, standing, and walking with no relieving factors. Examination revealed tenderness in the back and decreased thoracic and lumbar mobility. Dr. Remo prescribed Flexeril and Naprosyn, encouraged him to perform daily back exercises, and referred him to physical therapy for modality treatments. (Tr. at 378-80.)

Plaintiff saw Dr. Remo on July 18, 2012, for back pain in poor control that plaintiff reported was worsening. The pain was aggravated by bending, changing positions, lifting, sitting, standing, and walking. Examination revealed tenderness to the thoracic spine that was moderate with motion, decreased thoracic mobility, decreased lumbar mobility, and positive posterior tenderness. (Tr. at 374-76.) Dr. Remo recommended physical therapy and refilled his prescriptions. (Tr. at 370.) A lumbar spine x-ray taken the next day revealed postoperative changes at the L5-S1 level and mild scoliosis and degenerative changes. (Tr. at 388.)

On October 3, 2012, plaintiff saw Dr. Remo for refills. He reported his back pain was worsening. The pain was aggravated by bending, daily activities, extension, flexion, lifting, standing, twisting, and walking, and he had no relieving factors. Examination revealed lumbar spine tenderness that was moderate with motion, with no other abnormalities. Plaintiff was encouraged to perform back exercises. (Tr. at 370-72.) At an October 16, 2013 visit, Dr. Remo recommended a low-fat diet and increased exercise. (Tr. at 390.)

Plaintiff saw Dr. Remo on February 5, 2013 for lumbago or pain in the muscles and joints of the lower back, with fair control, and osteoarthritis of the lower extremities with poor control. He rated his back pain as 6/10 and his knee pain as 7/10, stating that both were worsening. Examination revealed thoracic and lumbar spine tenderness that was moderate with motion, right knee tenderness that was moderate with motion, and an unsteady gait with weakness. Dr. Remo refilled his prescriptions and encouraged various stretching exercises. (Tr. at 366-68.)

Plaintiff saw Dr. Remo again on May 15, 2013, for follow-up on his back pain. Examination revealed tenderness, tightness, and limited range of motion in his back. Dr. Remo diagnosed chronic mixed dyslipidemia (elevated cholesterol) with fair control, and chronic, stable, lumbar spinal stenosis or narrowing. He prescribed Norco and Flexeril and recommended back stretching exercises as often as possible. Plaintiff saw Dr. Remo on June 17, 2013, for shoulder pain after throwing a football. Examination of the right shoulder revealed mild tenderness, moderate pain with motion, and no crepitus or cracking. Dr. Remo diagnosed acute rotator cuff syndrome and encouraged stretching exercises. (Tr. at 428-32.)

On July 15, 2013, plaintiff saw Dr. Remo for back pain, stating that his pain medications were stolen from a campground that weekend. Examination showed moderate tenderness with motion. Dr. Remo diagnosed chronic lumbar spinal stenosis without neurogenic claudication in poor control, stable hypertension, and stable dyslipidemia. Dr. Remo recommended keeping medications in a safe place and performing back stretches as often as possible. (Tr. 432-34.)

Plaintiff saw Dr. Remo on September 15, 2013, for routine check-up and worsening back pain despite increased pain medication. Examination showed moderate tenderness with palpation and motion. Dr. Remo noted that his spinal lumbar stenosis was poorly controlled and increased his Norco. (Tr. at 435-37.)

In October 3, 2013 correspondence addressed "to whom it may concern," Dr. Remo stated:

> Mr. Hammond is a 46 year old male who was involved in a motor vehicle accident in November of 2007. He sustained multiple fractures, specifically for which infusion was preformed. (*sic*) He also suffered from right clavicular, left humeral, and multiple rib fractures resulting in pneumothorax.
>
> He has undergone physical therapy and was on narcotic medication to ease his discomfort. He has chronic neck and back pain that he has to lie down repeatedly throughout the day to get comfortable. It is because of this he is unable to be gainfully employed.

(Tr. at 393.)

Plaintiff saw Dr. Remo on November 19, 2013, for low back pain that radiated down both legs. He stated that his medications were helpful, but he was out of medication at the time. Examination revealed decreased range of motion, tenderness, pain, and spasm. Dr. Remo believed that plaintiff's spinal stenosis was in poor control and encouraged exercise and progressive stretching exercises. (Tr. at 438-41.)

On January 17, 2014, plaintiff saw Dr. Remo for refills. He also indicated that he had pain in his right shoulder and both knees with variable intensity. He stated that prior injections to his shoulders provided good results. Examination revealed tenderness in the lumbar region, right shoulder, and bilateral knees, and decreased range of motion of the lumbar spine. Dr. Remo diagnosed stable chronic lumbar spinal stenosis, acute shoulder pain in poor control, and acute bilateral knee pain in poor control. He prescribed pain medication and recommended exercise, stretching for the back, and steroid injections. Plaintiff returned a few days later for a cortisone injection to his right shoulder. Dr. Remo observed severe tenderness with motion on the right shoulder with limited range of motion. (Tr. at 442-49.)

Plaintiff saw Dr. Remo on March 13, 2014. Examination showed tenderness in the left shoulder, bilateral knees, and lumbar spine. Dr. Remo also noted lumbar back spasm. He diagnosed stable chronic lumbar spinal stenosis and chronic left shoulder pain in poor control. He administered an injection to the left shoulder and recommended increased

- 5 -

physical activity and stretching exercises. (Tr. at 450-53.) During March and April 2014, plaintiff received four bilateral knee injections for osteoarthritis. (Tr. at 395-401.)

On May 20, 2014, plaintiff saw Dr. Remo for shoulder pain, stating that his pain medications were not entirely effective. He stated that the pain was most noticeable when he lifted his arms up, but he otherwise had no difficulty with range of motion. Examination revealed bilateral shoulder tenderness, but no other abnormalities. Dr. Remo diagnosed tendonitis of the left shoulder and subacromial bursitis of the right shoulder. He refilled plaintiff's prescriptions and administered an injection. (Tr. 408-10.)

On June 16, 2014, plaintiff saw Dr. Remo for pain from an ingrown toe nail. He saw Dr. Remo two weeks later for rib pain on his left side, numbness in his buttocks, and lower back pain. The pain caused inability to sleep. Examination revealed moderate tenderness with motion and palpation in the mid thoracic spine and left rib area, but no other abnormalities. Dr. Remo prescribed Norco and Flexeril, and recommended increased physical activity and progressive stretching exercises. Dr. Remo indicated that if there was no improvement with conservative measures, he would order additional imaging and/or physical therapy. (Tr. at 411-419.)

Plaintiff saw Dr. Remo on August 12, 2014, requesting steroid injections for shoulder and knee pain. He reported that Norco had provided minimal improvement, that he had done "a lot of lifting" over the weekend organizing his home following the death of his stepfather, and that he felt crepitus or cracking in his shoulders when he moved past 60 degrees. Examination revealed tenderness to both shoulders and knees with motion and palpation, but no other abnormalities. Dr. Remo diagnosed chronic bilateral shoulder pain in poor control and chronic osteoarthritic of the knees in fair control. He prescribed medication and administered injections to the shoulders and knees. (Tr. 419-23.)

On October 6, 2014, plaintiff saw Dr. Remo for a routine check-up. He complained of severe lower back pain and neck stiffness. He stated he was unable to move at times due to pain and that he had done a lot of lifting over the weekend, causing muscle strain to his low back. He said stretching did not provide significant improvement.

Examination revealed tenderness, pain, and spasm of the cervical and lumbar back, but no other abnormalities. Dr. Remo diagnosed chronic spinal stenosis of the lumbar spine without neurogenic claudication and prescribed medications. (Tr. at 424-27.) Plaintiff received a steroid injection to both knees on October 21, 2014. (Tr. at 395.)

**ALJ Hearing**

On December 12, 2014, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. at 26-61.) He is right-handed, six feet three inches tall, and weighs 230 pounds. He stopped working in 2007 because it was difficult for him to do anything "as far as mobility." (Tr. at 35.) It is difficult for him to sit for over an hour without needing to get up and move around, stretch, or lay flat on his back for a while. It hurts to put his arms above his head and "almost any reach" causes pain. (Tr. at 37.) Although he has undergone surgery to his lower back, it is his middle back that currently causes the most problems. (Tr. at 35-38.)

Dr. Remo had previously placed restrictions on him and has currently instructed him to avoid picking up 80 to 100 pounds. Steroid injections have helped his knees "quite a bit." (Tr. at 42.) While the injections help his shoulders for up to two and a half weeks, he is unable to get the injections every month. (Id.) He can comfortably lift 35 pounds and walk less than half of a mile. After his walk, he sits in a recliner for 20 to 25 minutes. He needs to lie down at least three times a day for 25 to 30 minutes at a time in order to relieve the tension from his neck and back. (Tr. at 44-52).

A vocation expert also testified at the hearing to the following. Plaintiff would be unable to perform his past relevant work.[3] The ALJ asked the vocational expert a hypothetical question describing an individual with what the ALJ determined later was plaintiff's RFC and vocational profile. The vocational expert testified that such an

---

[3] Plaintiff's employment history includes work as a machine operator, construction traffic director, sheet metal worker, paver installer, lawn maintenance, and insulation installer. (Tr. 20-21, 295).

individual could perform sedentary, unskilled jobs such as addresser, document preparer, and tube operator. (Tr. at 58-60.)

## III. DECISION OF THE ALJ

On December 22, 2014, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. at 10-22.) At Step Two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease and osteoarthritis/degenerative joint disease of the knees and shoulders. (Tr. at 12.) At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained at 20 C.F.R. part 404, subpart P, appendix 1. At Step Four, the ALJ found plaintiff retained the residual functional capacity to perform sedentary work except that he could stand and/or walk for two hours; sit for six hours; occasionally stoop and crouch; rarely reach overhead; never kneel, crawl and climb stairs and ramps; and have no exposure to extreme cold and vibration. (Tr. at 14.) At Step Five, the ALJ concluded that plaintiff could not return to his past relevant work but could perform other sedentary work as it exists in the national economy such as addresser, document preparer, and tube operator. Consequently, the ALJ found that plaintiff was not disabled under the Act. (Tr. 20-22.)

## V. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because

substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues the ALJ erred in weighing the opinion of Dr. Remo and in determining his RFC. This court disagrees.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir.

2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996). The Commissioner uses medical sources to "provide evidence" about several factors, including RFC, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ determined that plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could stand and/or walk for two hours and sit for six hours. He could occasionally stoop and crouch, rarely reach overhead, never kneel, crawl, or climb stairs or ramps, and have no exposure to extreme cold and vibration. (Tr. at 14.) While the ALJ found plaintiff was limited to a sedentary level of functioning, he also found that plaintiff's allegations of disabling symptoms and limitations were not consistent with the record. (Tr. at 14-20.) The ALJ considered the October 3, 2013 opinion of Dr. Remo that plaintiff was unable to be gainfully employed and gave it no weight. (Tr. at 20, 393.)

If the ALJ discounts a treating physician's opinion, he should give "good reasons" for doing so. Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); 20 CFR § 404.1527(c)(2). The ALJ gave good reasons here. The ALJ properly stated that the ability to be gainfully employed was not a medical opinion, but an opinion on the application of the statute. See Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991) (a physician's opinion that a claimant cannot be gainfully employed is not a medical opinion, but is an

2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996). The Commissioner uses medical sources to "provide evidence" about several factors, including RFC, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ determined that plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could stand and/or walk for two hours and sit for six hours. He could occasionally stoop and crouch, rarely reach overhead, never kneel, crawl, or climb stairs or ramps, and have no exposure to extreme cold and vibration. (Tr. at 14.) While the ALJ found plaintiff was limited to a sedentary level of functioning, he also found that plaintiff's allegations of disabling symptoms and limitations were not consistent with the record. (Tr. at 14-20.) The ALJ considered the October 3, 2013 opinion of Dr. Remo that plaintiff was unable to be gainfully employed and gave it no weight. (Tr. at 20, 393.)

If the ALJ discounts a treating physician's opinion, he should give "good reasons" for doing so. Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); 20 CFR § 404.1527(c)(2). The ALJ gave good reasons here. The ALJ properly stated that the ability to be gainfully employed was not a medical opinion, but an opinion on the application of the statute. See Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991) (a physician's opinion that a claimant cannot be gainfully employed is not a medical opinion, but is an

opinion on the application of the Social Security Act). This task is solely the responsibility of the ALJ. The ALJ further found that Dr. Remo's statement that plaintiff needed to lie down frequently throughout the day unsupported by, and not specifically addressed in, Dr. Remo's own treatment records. (Tr. at 20.)

Dr. Remo's treatment records also support the ALJ's reasoning. For example, Dr. Remo frequently and regularly instructed plaintiff to increase his physical activity. (Tr. at 366, 370, 378, 419, 427, 430, 434, 441, 445, 453.) The ALJ noted Dr. Remo's progress notes "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. at 20, 368, 372, 376, 380, 383, 386-88, 404-05, 410, 414-15, 418-19, 422-23, 427, 429, 431, 433, 436, 444-45, 453.)

Additionally, Dr. Remo's October 3, 2013 correspondence does not reference any actual specific work-related limitations. Nor did Dr. Remo state his opinion regarding plaintiff's abilities to stand, walk, lift, carry, concentrate, or any other specific work-related ability. While Dr. Remo believed that plaintiff had to "lie down repeatedly throughout the day to get comfortable," he did not state how often or for how long. (Tr. at 393.) Because Dr. Remo's opinion that plaintiff had to lie down repeatedly was unsupported by the record, and because his opinion that plaintiff was not gainfully employable was unsupported and an opinion reserved to the Commissioner, the ALJ lawfully gave Dr. Remo's opinion no weight. See Loving v. Dept. of Health & Human Services, 16 F.3d 967, 971 (8th Cir. 1994) (physician's conclusory statement of disability without supporting evidence does not overcome substantial medical evidence supporting the Commissioner's decision); Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992) (treating physician's opinion may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory). See 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "a lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability, as 'the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011).

In determining plaintiff's supportable degree of limitation in this case, the ALJ also considered the conservative and routine nature of plaintiff's treatment, finding that plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual." (Tr. 18.) The ALJ noted that plaintiff had not sought treatment from a specialist, was never referred to a pain management specialist or surgeon, and never visited an emergency room or urgent care. (Tr. 18, 43). Furthermore, plaintiff's medications remained constant and were generally successful in controlling his symptoms, as evidenced by the normal objective findings upon examination. (Tr. at 18, 30-31, 39, 42, 366, 368, 372, 376, 380, 386-88, 395, 397-401, 410, 414-15, 418-19, 422-24, 427-29, 431-33, 436, 442, 444-45, 450, 453.) See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (a pattern of conservative medical treatment is a proper factor for an ALJ to consider in evaluating a claimant's credibility).

The ALJ also considered plaintiff's activities of daily living. While plaintiff reported a limited range of activities in connection with his application for benefits and in his testimony (Tr. 34, 40, 45, 48-52, 316-23), the ALJ found this to be inconsistent and outweighed by other evidence in the record. For example, plaintiff reported in April 2012 that he was helping a friend in the garden. (Tr. at 19, 382.) In May 2013, plaintiff reported that he had been throwing a football around. (Tr. at 430.) In July 2013, plaintiff reported that he went camping. (Tr. at 432-33.) Plaintiff also reported to his doctor in August 2014 that he was organizing his house and doing a lot of heavy lifting. (Tr. at 19, 419, 424.) Furthermore, as noted above, Dr. Remo consistently encouraged plaintiff to *increase* his physical activity. (Tr. at 366, 370, 378, 419, 427, 430, 434, 441, 445, 453.) "Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). Plaintiff's ability to engage in many normal daily living activities provides evidence which further confirms the ability to work on a daily basis in the national economy. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000).

This court therefore concludes the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 28, 2017.